NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—May, 1884.

WEBB v. DAY.

*In the matter of the estate of* TITUS WEBB, *deceased.*

Decedent, by his will, provided: "I give and bequeath all the rest and
remainder of my real and personal estate to H., of L., England, as
trustee. It is understood that he shall divide the same among my
nieces and nephews living in England, according to private instruc-
tion given to him by me." The executor, upon his accounting, pro-
duced a paper purporting to be a letter from decedent to H., and
asked, in order to a proper distribution of the estate, for the issuance
of a commission to examine H. and other witnesses, for the purpose
of identifying that paper as constituting the "instructions" in ques-
tion.—

*Held,* that it was competent to establish, by parol evidence, that the
paper produced constituted the "instructions" referred to; and, it
being possible that such fact might be proved by the examination
sought, that a commission should issue.

Dyer v. Erving, *ante,* 160—followed.

PETITION of Henry S. Day, named as executor in a
paper produced as decedent's will, asking that a com-
mission issue in proceedings for petitioner's accounting;
opposed by Samuel Webb, and others, decedent's next
of kin. The facts appear sufficiently in the opinion.

CHAS. E. WILSON *and* EUGENE D. HAWKINS, *for the motion.*

CHAS. B. ALEXANDER, *opposed.*

THE SURROGATE.—The executor of the last will and
testament of this decedent has lately filed with the Sur-

rogate a petition, which contains, among other things, the matters following:

It alleges that, in October last, all persons interested in this estate were cited by the petitioner to attend, on the 22nd of November then next, his accounting as executor; that, upon the return day of such citation, no person appeared to oppose the settlement of his account, and that no objections have since been filed thereto. He asks that, for making just and proper distribution of the estate now in his hands, he be instructed by the Surrogate touching, among other things, the force and effect of the fourth clause of decedent's will.

That clause reads as follows: "I give and bequeath all the rest and remainder of my real and personal estate to John Hyrons, Esq., of Lye, Worcestershire, England, as trustee. It is understood that he shall divide the same among my nephews and nieces living in England, according to private instruction given to him by me."

The executor further avers in his petition that a certain paper writing, produced before the Surrogate and obtained from John Hyrons, above named, purports to be a letter of instruction from the decedent to the said John Hyrons, and is claimed to contain, and, in fact, to constitute the "private instructions" referred to in testator's will. The executor prays that a commission may issue for the examination of Hyrons, and of certain other specified persons, in order that said writing may be identified as a writing incorporated into the will itself, by the above quoted words of reference to private instructions.

I have recently had occasion, in passing upon the

matter of Greene's estate (*ante, 160*), to inquire how far it is possible to engraft upon a will the terms of an extraneous paper to which such will refers. I found this to be the doctrine of the law:

*1st*. That words of reference in a will never suffice to incorporate the contents of an extraneous paper, unless it can be clearly shown that, at the time such will was executed, such paper was actually in existence.

*2nd*. That an extraneous paper, produced as and for a paper so referred to in a will, and shown to have been in existence when such will was executed, may be adjudged to form a part of such will, and as such may be admitted to probate, under these circumstances, and these only, to wit: when, by satisfactory and conclusive evidence, it has been shown to be the selfsame paper which the testator by his words of reference designed to indicate.

Upon careful consideration of the facts and circumstances of the present case, I sustain the claim, which the counsel for the executor and counsel for Mr. Hyrons unite in maintaining, that the application, to the present case, of the two propositions above quoted cannot well be ascertained without the testimony of the witnesses whose examination by commission is now applied for. The will itself in no manner identifies the "instructions" to which it refers. Indeed, for aught that it declares or intimates, such instructions may never have been embodied in a written instrument, but may rather have been orally communicated to Mr. Hyrons.

A paper is produced, however, which is claimed to have been addressed to Hyrons by the testator himself. It purports to be signed by him, and to be witnessed by

one Athelston Hill.   I think it is competent to estab-
lish by parol evidence that it constitutes the "instruc-
tions" referred to in the will, and it may be that that
fact can be established by the testimony of the very wit-
nesses whose examination is now applied for.

A commission may, therefore, issue.